# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| DEAMINGES DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV1041DJS/MLM |
| | ) | |
| DAVID DORMIRE,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court pursuant to the Petition for Writ of Habeas Corpus filed by Petitioner Deaminges Davis ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 6. Petitioner filed a Traverse. Doc. 14. Petitioner is incarcerated in the Jefferson City Correctional Center. David Dormire as the superintendent of that facility is the properly named Respondent. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 3.

## I.
## BACKGROUND

Petitioner, Clarence Taylor, and Eric Threadgill were charged by substitute information in lieu of indictment as follows: Count I, murder in the first degree in that on March 22, 1998, they caused the death of Willie Curry by shooting him; Count II, robbery in the first degree in that on March 22, 1998, they forcibly stole United States currency in Curry's possession and in the course thereof they

---

[1]      Pursuant to 28 U.S.C. § 2254, Rule 2(a), the court has substituted David Dormire for James Purkett as the superintendent of the Jefferson City Correctional Center.

were armed with a deadly weapon; and Count III, armed criminal action in regard to the murder of Willie Curry. Resp. Ex. 2 at 16-17. On November 9, 2000, after a jury trial, Petitioner was found guilty of all three counts. Resp. Ex. 2 at 75-77. The court sentenced Petitioner to life imprisonment without the possibility of probation or parole for the murder of Willie Curry. Petitioner was also sentenced to two terms of thirty years. Petitioner's sentences are to be served concurrent with one another. Resp. Ex. 1 at 772.

During the investigation two eyewitnesses to the robbery and murder of Curry identified Petitioner. Both of these witnesses testified at Petitioner's trial. Resp. Ex. 1at 325-415, 416-518. Petitioner testified at his trial. He admitted that he was near the scene of the crimes when they occurred and that when he heard shots being fired he "took off running" but denied any involvement in the crimes. Resp. Ex. 1 at 698, 700.

Petitioner filed a direct appeal with the Missouri appellate court which affirmed the judgment against him by Order dated June 21, 2005. Resp. Ex. 3, Ex. 5. Petitioner filed a pro se post-conviction relief motion. Resp. Ex 6 at 3-25. Counsel was appointed and filed an Amended Motion to Vacate, Set Aside or Correct Sentence and Judgment. Resp. Ex. 6 at 30-56. On August 18, 2004, the motion court issued Conclusions of Law and Order denying Petitioner's Amended Motion. Resp. Ex. 6 at 676. Petitioner appealed the decision of the motion court to the Missouri appellate court which denied Petitioner relief on June 22, 2005. Resp. Ex. 7, Ex. 9.

Petitioner filed a § 2254 Petition on July 11, 2006, in which he raises the following issues:

**(1)** Petitioner's constitutional rights were violated because the prosecutor used a peremptory challenge to exclude from the jury African American Venireperson Small in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986);

**(2)** Petitioner's constitutional rights were violated because the prosecutor used a peremptory challenge to exclude from the jury African American Venireperson Michael Henderson in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986);

**(3)**     Petitioner's constitutional rights were violated because the prosecutor used a peremptory challenge to exclude from the jury African American Venireperson Kimberly Carroll  in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986);

**(4)**     Petitioner's constitutional rights were violated because the trial court abused its discretion and admitted as evidence a photograph of Petitioner;

**(5)**     Petitioner's constitutional rights were violated when Detective Jordan testified that he obtained a photograph of Petitioner from the Ferguson police department;

Doc. 1.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings.  <u>Sweet v. Delo,</u> 125 F.3d 1144, 1149 (8th Cir. 1997).  Failure to raise a claim in a post-conviction appeal is an abandonment of a claim.  <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)).  A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) .  .  . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies."  <u>Id.</u> at 1151 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991)).  "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim."  <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court.  <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988).  "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim."

Id. (citation omitted). Petitioner presented the issues which he raises before this court to the Missouri appellate court either in his direct appeal or the appeal of his post-conviction relief motion. As such, the court finds that Petitioner has exhausted his State court remedies and that he has not procedurally defaulted any of the issues which he raises before this court.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The court finds that Petitioner's § 2254 Petition was timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, Slip Op. 05-1467 at 6 (8th Cir. Nov. 30, 2006). "To obtain habeas relief, [a habeas petitioner] must be able to point to the Supreme Court precedent he thinks the [] state courts acted contrary to or applied unreasonable." Id. at 7 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. § 2254(d)(1)." Id. at 8. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 7-8 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.   The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." <u>Id.</u> at 412.   The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. 412-13.

<u>Williams</u> further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. <u>See id.</u> at 411.  "'Rather [the] application [by the state-court] must also be unreasonable.'" <u>Copeland v. Washington</u>, 232 F.3d 969, 973 (8th Cir. 2000) (quoting <u>Williams</u>, 529 U.S. at 411).  <u>See</u> <u>also</u> <u>Siers v. Weber</u>, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in <u>Williams</u> that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are  materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

from [the Court's] precedent." 529 U.S. at 406. <u>See also</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." <u>Williams</u>, 529 U.S. at 413. <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in <u>Penry</u> that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." <u>Id.</u> at 793 (citing <u>Williams</u>, 529 U.S. at 410-11).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." <u>Boyd v. Minnesota</u>, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." <u>King v. Kemna</u>, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** <u>Lomholt v. Iowa</u>, 327 F.3d 748, 752 (8th Cir. 2003). <u>See also</u> <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

## IV.
## DISCUSSION

**Grounds 1, 2 and 3 - Petitioner's constitutional rights were violated because the prosecutor used peremptory challenges to exclude Venirepersons Small, Henderson and Carroll from the jury panel in violation of Batson v. Kentucky, 476 U.S. 79 (1986):**

**A.      Batson:**

Pursuant to Williams, this court must consider federal law applicable to the issues raised in Petitioner's Grounds 1-3. Williams, 529 U.S. at 410-13. Federal law is well settled that the Equal Protection Clause forbids a prosecutor from using peremptory challenges to exclude otherwise qualified persons from the jury based solely on their race. Devose v. Norris, 53 F.3d 201, 204 (8th Cir. 1995). "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Batson, 476 U.S. at 89. In Batson, 476 U.S.

at 96, the United States Supreme Court held that "in order to establish an equal protection violation, a defendant must first establish a prima facie case of purposeful discrimination in the selection of the jury panel." Indeed, it is the defendant's burden "to prove the existence of purposeful discrimination." Id. at 93.

The Eighth Circuit has further explained in regard to an alleged violation of Batson that:

> To establish a prima facie case, the defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of his race from the venire. Batson, 476 U.S. at 96. He then "'must show that these facts and any other relevant circumstances raise an inference that the prosecutor used [his peremptory] practice to exclude the veniremen from the petit jury on account of their race.'" United States v. Battle, 836 F.2d 1084, 1085 (8th Cir. 1987)(quoting Batson, 476 U.S. at 96). Once the defendant has established a prima facie case of race discrimination, the government has "the burden of articulating a clear and reasonably specific neutral explanation for removing a venireperson of the same race as the defendant." United States v. Cloyd, 819 F.2d 836, 837 (8th Cir. 1987).
>
> Whether an explanation is neutral is a question of comparability. "It is well-established that peremptory challenges cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged." Doss v. Frontenac, 14 F.3d 1313, 1316-17 (8th Cir. 1994) [remaining citations omitted].

Devose, 53 F.3d at 204. See also United States v. Hill, 249 F.3d 707, 714 (8th Cir. 2001) (denying Batson claim when the defendant failed to show that similarly situated white venirepersons were not struck from the jury panel); United States v. Brooks, 2 F.3d 838 (8th Cir. 1993).

Thus, Batson provides for a "three-step process for analyzing a prosecutor's use of peremptory strikes." Weaver v. Bowersox, 241 F.3d 1024, 1028 (8th Cir. 2001). First, a defendant "must show that he is a member of a cognizable racial group" and that "the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." Batson, 476 U.S. at 96 (citing Castaneda v. Partida, 430 U.S. 482, 494 (1977)). "Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury

selection practice that permits 'those to discriminate who are of a mind to discriminate.'" Id. (quoting Avery v. Georgia, 345 U.S. 559, 562 (1953)). "Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." Id.

Upon a federal court's review of a state trial court's rulings pursuant to Batson objections, the Eighth Circuit has noted that "a trial court's determination ... is highly fact-intensive" and "is based largely upon information 'that will not be evident from a reading of the record.'" Weaver, 241 F.3d at 1030 (citing United States v. Moore, 895 F.2d 484, 485-86 (8th Cir. 1990)).

On habeas review, pursuant to 28 U.S.C. § 2254(e)(1), federal courts afford "broad latitude in determining questions of fact by virtue of the statutory presumption in favor of the state court fact-finding." Id. "[D]eference to trial court fact-finding is doubly great [upon consideration of a Batson claim] because of the 'unique awareness of the totality of the circumstances surrounding voir dire.'" Id. (citing Moore, 895 F.2d at 486). See also United States v. Pherigo, 327 F.3d 690, 696 (8th Cir. 2003) (holding that upon habeas review a federal court is "required to afford the district court a great amount of deference in its pretext determination"). Because Batson claims require factual determinations, federal review of a Batson claim pursuant to a habeas petition is governed by §2254(d)(2). Weaver, 241 F.3d at 1031 n.2. Even erroneous fact finding on the part of a state court does not justify granting a federal writ of habeas corpus if the court erred "reasonably." Id. at 1030.

The United States Supreme Court holds that a prosecutor's observations about a potential juror in voir dire, as well as what is said, may form a legitimate nondiscriminatory reason for exercising a peremptory strike. Purkett v. Elem, 514 U.S. 765, 768-69 (1995). Additionally, upon considering a prosecutor's reasons for striking a venireperson, "[t]he 'evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.'"

Pherigo, 327 F.3d at 696 (quoting United States v. Feemster, 98 F.3d 1089, 1092 (8th Cir.1996) (internal quotations omitted).

Additionally, the Eighth Circuit has held that a prior arrest, having a grudge against police officers, having a relative who was shot by the police, having a relative who is incarcerated, reluctance to impose the death penalty, and a venireperson's being close in age to the defendant are race-neutral reasons for striking a venireperson. Luckett v. Kemna, 203 F.3d 1052, 1054-55 (8th Cir. 2000) (citing Shurn v. Delo, 177 F.3d 662, 665 (8th Cir. 1999); United States v. Martinez, 168 F.3d 1043, 1047 (8th Cir.1999) (age); Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir.1997) (relative in jail); United States v. Wiggins, 104 F.3d 174, 176 (8th Cir.1997) (prior contacts of juror and relative of juror with the criminal justice system).

## B.     Venireperson Small:

In regard to the allegation in Ground 1 that the prosecutor's striking Venireperson Small was not race neutral and that striking Venireperson Small violated Petitioner's constitutional rights, Petitioner argues that in response to his challenging the State's exclusion of Venireperson Small, an African American, the prosecutor stated that he struck Small because he was a single man with two children and had "no substantial ties to the community"'; that the prosecutor said that Small had been a foreman on a jury and was a party to a civil suit stemming from the death of his brother in a highway accident; and that the prosecutor said that he did not want a juror who might be thinking, "we walk [this defendant] out of here, criminal[ly], maybe we can sue him civilly."  Petitioner argues that the prosecutor's reasoning in regard to Venireperson Small was "far-fetched" and that  "it takes a great leap to conclude that a juror whose brother died in an accident would acquit someone of murder in the belief that this would enable the murder victim's family to seek civil damages." Petitioner also states that the State used six peremptory strikes to strike African Americans who made

up 37.5% of the jury panel. Doc. 1, Supp. at 1-2. Petitioner contends the decision of the Missouri appellate court in regard to the striking of Venireperson Small is not a reasonable application of federal law. Doc. 14 at 5. He also contends that "it is unreasonable to conclude that African American panel member James Small - whose own brother had been killed in a car accident on his birthday - posed a greater concern for the state prosecutor in a murder trial than Caucasian panel member J. Anderson - who questioned the propriety of charging an accompli[ce] for murder who was not the actual trigger man." Doc. 14 at 8.

In response to Petitioner's objections to the prosecutor's striking Venireperson Small, the prosecutor offered the following explanation for striking Small:

> With regard to James Small, a thirty-three year old single man with two kids, my main concern with him he was a foreman on a jury, he shows it being a criminal jury, he was a foreman in that case. I think he's actually, I would portray him as a leader not a follower and he's a party to a pending suit where he has had a brother killed on Highway 70 pending right now, you know. I know this may be a little farfetched, obviously there was a death involved in that and he's a party to the pending suit. I believe that probably he's going to get some sort of money damages with regard to that. This is a murder case, you know, I don't want him thinking on a jury that hey, look, this may be similar to the case involving my brother, we walk him out of here, criminal, maybe he can sue him civilly. These are the reasons with regard to James Small.

Resp. Ex. 1 at 286-87.

In response to this statement by the prosecutor, defense counsel stated that he was confused as to why Venireperson Small was struck and asked if the prosecutor struck him because he had children. The following discussion then took place:

> **THE PROSECUTOR**: Well, he's thirty three, he has two kids, he's not married, doesn't have significant ties to the community. I mean, that's the rationale or thinking I was using at that particular time.

> **DEFENSE COUNSEL**: Well, I would point out for the court Mr. Horney is juror Number 569, a white male, is divorced and has according to the jury list one child. I don't see a distinction in that respect between those two individuals. I'm sure there were others. I know there were other jurors that were either divorced or have children

or single parents and I think that that is certainly pretextural in that it's only being applied to an African American male and not to Mr. Horney, a white male.

I also note Mr. Bird indicated he struck Mr. Small because he was a foreperson but he did not strike Mr. Trentham, a white male who also indicated he was a foreman. If I could have a minute to see if there were additional. Mr. Verble, juror number 142, also served as a foreman in a jury was not struck by the State with regard to distinguishing these two individuals, Your Honor.

**THE PROSECUTOR**: Trentham, I believe he served on two civil juries, one as a foreman so obviously at least on one of those occasions he wasn't a foreman. Trentham has a brother that's a county police officer for thirty years, obviously there's a police court relationship Small does not have. With regard to Verble, he again was on two civil juries, one as a foreperson but he has also been on a Grand Jury and knows Trent Mitchell, so obviously, I mean, the association there with a prosecutor having served on a Grand Jury I think distinguishes him from James Small.

Resp. Ex. 1 at 290-91.

The trial court ruled as follows in regard to all of Petitioner's Batson challenges including that

of Venireperson Small:

I reviewed the reasons proffered by the State, I have evaluated the objections, the timely objections by the defense, I think in the context of preemptive strikes I rule that the State has articulated plausible reasons for those strikes. I think the race neutral reasons, again, on some of those, on two of them in particular, Henderson and Dinwiddie, they moved to strike for cause, I ruled in favor of the defense there. There was a quantum of evidence, I didn't think enough for cause but in the area of peremptory strikes I think it's permissible strategic reasons can be utilized. The State has articulated them, I find them plausible, race neutral and so the objections of the defense are made in a timely manner, preserved and overruled.

. . .

Also the Court will make a record both counsel in this case are known to the Court, neither has ever engaged in what this Court would view as racist behavior before this Court ... ."

Resp. Ex. 1 at 295, 297-98.

First, in regard to the issues of Grounds 1, 2 and 3, in which he alleges that his constitutional

rights were violated based on Batson, the Missouri appellate court held as follows:

... According to the defendant, the trial court clearly erred in denying the defendant's Batson claims as to African-American venirepersons Small, Henderson and Carroll because the prosecutor's use of peremptory strikes against the three individuals violated the constitutional right to equal protection. We disagree.

The appellate court will not overturn a trial court's ruling regarding a peremptory challenge unless the decision is clearly erroneous. State v. Parker, 836 S.W.2d 930, 939 n.7 (Mo. banc 1992). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (citations omitted).

The procedure to be followed by the trial court when a defendant properly raises a Batson challenge is as follows. First, the defendant must raise a Batson challenge with regard to at least one specific venireperson struck by the State and identify the cognizable racial group to which the venireperson belongs. The State is then required to present a "reasonably specific and clear race-neutral explanation" for striking the venireperson. Parker, 836 S.W.2d at 939. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the State's proffered reasons for the strike were merely pretextual and that the strike was racially motivated. In determining whether proffered explanations are pretextual, much of the determination turns upon evaluation of intangibles such as credibility and demeanor. Id., at 934. Therefore, trial judges are given considerable discretion in determining whether the defendant established purposeful discrimination. Id., *citing* Hernandez v. New York, 500 U.S. 352. 365 (1991). Moreover, the justification for a peremptory strike need not rise to the level of a justification for a challenge for cause. State v. Hall, 955 S.W.2d 198, 205 (Mo. banc 1997). Instead, a prosecutor's perception of the venireperson based upon "past experience, hunches, or horse sense" will still survive a Batson challenge if based on a racially neutral factor. Id.

Resp. Ex. 5 at 2-3.

Particularly, upon addressing the issue of Ground 1 which alleges a Batson violation in regard to Venireperson Small, the Missouri appellate court held as follows:

[T]he prosecutor provided race-neutral explanations for the challenged peremptory strikes. With respect to venireperson Small, the prosecutor struck him because he was a thirty-three year old single man with two kids, with no ties to the community. In addition, venireperson Small was portrayed as a leader, rather than a follower, and may have previously sat as a the foreman on a criminal case that ended in a mistrial. Moreover, venireperson Small was involved in current civil litigation resulting from his brother's tragic death, and the prosecutor indicated his hesitancy because Mr.

Small might believe the victim's family in the present case would be better off pursuing a civil claim against the defendant. The prosecutor candidly acknowledged his reasoning "may be a little farfetched."

The defendant, however, argues that the rationale for striking venireperson Small provided by the prosecutor was pretextual, and instead based on race, because the prosecutor did not strike similarly-situated white venirepersons, James Horney, Lawrence Verble, Kenneth Trentham, John Anderson, Deborah Bartola, Holly Elchinger or Ellis Wells. However, none of these venirepersons had experience, as Small may have had, as a foreperson in a criminal case that ended in a mistrial. Instead, both Trentham and Verble served on civil juries that reached a verdict, and, unlike venireperson Small, had connections to law enforcement and court personnel that were desirable factors. In addition, the seven venirepersons listed above were not parties to pending litigation.

Moreover, with respect to venireperson Anderson, whom the defendant points to repeatedly in his brief as a less desirable juror than venireperson Small, we find the defendant's analysis unpersuasive. As stated above, venireperson Anderson had no prior experience as a foreman in a criminal case that did not reach a unanimous verdict and was not a party to any pending civil litigation, both issues that presented concern to the prosecutor. In addition, the trial judge indicated that Mr. Anderson seemed bright and could handle sitting on the jury, and any response he gave regarding an inability to follow the felony-murder rule was the result of his confusion as to the voir dire questions. Further, venireperson Anderson stated that he was comfortable imposing the sentence of life imprisonment without probation or parole, and could put aside any anger he felt toward the police stemming from their investigation of his stolen car.

Finally, the trial court properly considered the court's past relationship with the prosecutor when considering the sufficiency of the Batson challenge, stating that both counsel in the case were known to the court and have never engaged in racist behavior before the court. Parker, 836 S.W.2d at 934. The trial court properly considered the prosecutor's race-neutral explanations for the peremptory strikes and the court's experience with the prosecutor. While we also find the prosecutor's reasoning that Small might believe the victim should rather seek civil redress to be somewhat farfetched, we defer to the trial court's assessment of this hunch, and do not find the trial court's decision as to Small to be clearly erroneous.

Resp. Ex. 5 at 3-5.

As stated above, pursuant to its habeas review this court must determine if the State court decision regarding the issue raised in Petitioner's Ground 1 is contrary to federal law and whether the State court reasonably applied federal law when addressing this issue. Batson sets forth a three

14

step analysis for determining whether a constitutional violation has occurred regarding a peremptory strike. Weaver, 241 F.3d at 1028; Devose, 53 F.3d at 204. Pursuant to the first step, Petitioner's counsel challenged the prosecutor's striking Venireperson Small and identified Venireperson Small as an African American. See Batson, 476 U.S. at 96. As required by Batson, the prosecutor responded by articulating race-neutral reasons for striking Venireperson Small including Small's participation in a civil suit involving the death of his brother and the fact that Small previously had been a foreman on a jury. See Devose, 53 F.3d at 204. As further required by Batson, Petitioner's counsel then suggested reasons why striking Small was pretextual and the prosecutor responded to defense counsel's argument. Upon considering the positions of the prosecutor and of defense counsel, the trial court considered that both counsel were known to the court and had not engaged in racist behavior before the court. See Pherigo, 327 F.3d at 696. As required by Batson, the trial court then evaluated the positions of counsel and determined that the State articulated plausible reasons for its strike of Venireperson Small.

Likewise, upon considering whether Petitioner's constitutional rights were violated by the prosecutor's striking Venireperson Small, the Missouri appellate court considered that the prosecutor provided race-neutral reasons for striking Small, including the prosecutor's belief that because Small was involved in civil litigation resulting from his brother's death he might believe that the victim's family in the case against Petitioner would be better off pursuing a civil claim against Petitioner. See Devose, 53 F.3d at 204. The appellate court considered that while defense counsel noted that white persons whom the prosecutor did not strike also had been forepersons, none of these individuals were parties to pending litigation. The Missouri appellate court specifically recognized the procedure required by Batson, and concluded that the trial court followed this procedure and that the prosecutor articulated race-neutral reasons for striking Venireperson Small. Consistent with federal law, because

it found that the trial court's decision was not clearly erroneous, the Missouri appellate court deferred to the trial court's assessment of the prosecutor's reasoning, despite the fact that it concluded that the prosecutor's reasoning was "somewhat farfetched." See Pherigo, 327 F.3d at 696; Weaver, 241 F.3d at 1030. Consistent with federal law, the Missouri appellate court also noted that the trial court considered its past relationship with the prosecutor. See Pherigo, 327 F.3d at 696. In regard to Venireperson Anderson, consistent with federal law, the Missouri appellate court considered factors that distinguished him from Venireperson Small. See Luckett, 203 F.3d at 1055 (holding that to prove a Batson violation the habeas petitioner had to show that a white juror who gave weaker answers on the death penalty was similar "in relevant aspects to the challenged African-American juror") (citing Kilgore v. Bowersox, 124 F.3d 985, 992 (8th Cir. 1997) (holding that there was no pretext when unchallenged white jurors were not "identical" to challenged African-American juror). As such, this court finds that the decision of the Missouri appellate court in regard to the issue raised by Petitioner in Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the court finds in regard to the issue of Petitioner's Ground 1 that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See Batson, 476 U.S. at 96; Pherigo, 327 F.3d at 697; Hill, 249 F.3d at 714; Weaver, 241 F.3d at 1028; Devose, 53 F.3d at 204. The court finds, therefore, that Petitioner's Ground 1 is without merit and that relief on its basis should be denied.

**C.    Venireperson Henderson:**

Petitioner contends that pursuant to Batson his constitutional rights were violated when the prosecutor was permitted to use a peremptory strike against African American Venireperson

Henderson. In support of this contention Petitioner argues that despite his striking Henderson based on his views regarding Petitioner's case, the prosecutor retained a white juror, Venireperson Anderson, who was hesitant to convict someone of murder who did not actually kill the victim and who "harbored ongoing resentment towards the St. Louis Police due to their failure to pursue his complaint of attempted car theft." Petitioner further argues that the prosecutor's stated reasons for striking Venireperson Henderson were pretextual because the prosecutor struck Henderson believing that "he failed to disclose prior convictions or arrests" but the social security numbers upon which the prosecutor relied in reaching this conclusion did not match Henderson's social security number. Petitioner also argues that Venireperson Henderson was similarly situated to Venireperson Anderson, whom the prosecutor did not strike. Doc. 1, Supp. at 3.

Petitioner contends that the prosecutor was not concerned with white jurors' prior arrests for drugs and thefts, in which Juror Horney and Juror Wells had been involved" and that the decision of the Missouri appellate court in regard to the issue of Ground 2 is an unreasonable application of federal law. Doc. 14 at 10-11.

Prior to using a peremptory challenge to strike Venireperson Henderson, the prosecutor sought to strike Henderson for cause, stating:

> Michael Henderson, Your Honor, I show a birth date of 4-10-65 with multiple Social Security numbers so I do have the Social Security numbers. He indicates or he did not respond to the question about arrest, charge or convicted of a crime or at some point placed on probation. [sic] This individual apparently has an alias by the name of Terrence Wallace which includes leaving the scene of an accident where he received an SIS, 3-16-84 from St. Louis County, he got probation, three years probation. He also has a stealing arrest from 1983 from Belfontaine. He has a burglary first degree apparently turned over to Calloway County, that was in 1990. And apparently also a drug arrest, a misdemeanor, 12 of '91 which was in St. Louis City. I believe this is the same individual based upon what my investigator has told me regarding this juror Michael Henderson so I would move to strike him for cause.

Resp. Ex. 1 at 278-79.

The prosecutor's request to strike Venireperson Henderson for cause was not granted because the trial court was not convinced that Henderson had been arrested, charged, or convicted of a crime. Resp. Ex. 1 at 279-80, 295. Defense Counsel used a peremptory strike against Venireperson Henderson and defense counsel made a <u>Batson</u> objection to the prosecutor's peremptory strike. In response, the prosecutor offered the following explanation for his striking Venireperson Henderson:

> I moved to strike [Henderson] for cause based upon my belief that those are his prior convictions or prior arrests, at least the date of birth matches. I do know the Social Security doesn't match. I believe that the date of birth matches his date of birth. I believe that there is a legitimate concern that that is indeed a person that we talked about when I moved to strike him for cause.

Resp. Ex. 1 at 289-290.

In response to the prosecutor's explanation for using a peremptory strike to remove Venireperson Henderson defense counsel argued:

> Henderson, juror number 951, a black male, again this is based on this record that Mr. Bird has claiming that Mr. Henderson has some aliases and failed to disclose any prior arrests. Again, I think he has admitted the Social Security number he has does not match, he's saying the date of birth matches. I'm not certain we got a date of birth from the jury commissioner's office. This is pretextural, simply being used — there's no evidence to support that this individual has arrests which he has not disclosed and I object to that strike being excused.

Resp. Ex. 1 at 294.

The court has stated above what the trial court said in regard to all of Petitioner's <u>Batson</u> challenges. In particular, the trial court noted in regard to Venireperson Henderson that although it ruled in favor of the defense when the State sought to strike Venireperson Henderson for cause, the quantum of evidence in regard to peremptory strikes is not as great as that required to strike for cause. Resp. Ex. 1 at 295. <u>See</u> <u>United States v. Elliott</u>, 89 F.3d 1360, 1365 (8th Cir. 1996) (holding that peremptory strikes, for which no reasons need be given, absent a <u>Batson</u> challenge, differ "from challenges for cause, which by definition require a showing of cause"). The court also has set forth

above what the Missouri appellate court generally said in regard to the <u>Batson</u> claims raised in Petitioner's Grounds 1-3. Additionally, with regard to Venireperson Henderson, the Missouri appellate court held:

> With regard to venireperson Henderson, we also conclude that the trial court's decision overruling the defendant's <u>Batson</u> challenge was not clearly erroneous. According to the prosecutor, Mr. Henderson was struck because of a long series of previous arrests for crimes ranging from leaving the scene of an accident to a drug arrest. We agree with the trial court that there was some confusion regarding whether the venireperson Henderson had committed such crimes, but his date of birth matched that listed on the arrest sheet. Given the existence of a lengthy prior arrest record, coupled again with the court's acknowledgment that both counsel are known to the court and have never engaged in racist behavior, we conclude that the trial court's ruling was [not] clearly erroneous.

Resp. Ex. 5 at 5.

Pursuant to <u>Williams</u>, 529 U.S. at 410-13, the court must consider federal law applicable to the issue raised in Petitioner's Ground 2 and whether the State court's decision is contrary to and a reasonable application of this law. The reason given by the prosecutor for striking Venireperson Henderson was that he had prior arrests. Both the trial and Missouri appellate court recognized that Venireperson Henderson's prior arrest was a race-neutral reason for striking him. Under federal law a pervious arrest is a race-neutral reason for striking a venireperson. <u>Luckett</u>, 203 F.3d at 1054-55. Further, as stated above, in reaching this conclusion the Missouri appellate court considered that the trial court considered counsels' being known to the court. <u>See</u> <u>Pherigo,</u> 327 F.3d at 697. Moreover, as discussed above in regard to Petitioner's Ground 1, the Missouri appellate court considered the three step analysis required by <u>Batson</u> and that the trial court followed the required procedure. Further, the Missouri appellate court recognized that the trial court is given considerable discretion in determining whether a defendants establishes purposeful discrimination by the prosecutor when using peremptory strikes of jurors. <u>See</u> <u>id</u>; <u>Weaver</u>, 241 F.3d at 1028. Further, the Missouri appellate court noted that Petitioner repeatedly asserted that Anderson was not a desirable juror. The Missouri

appellate court considered that Anderson represented that he could put aside his ill feelings toward the police. Indeed, the record does not reflect that the Anderson was similar to Henderson. <u>See</u> <u>Luckett</u>, 203 F.3d at 1055. Based on these considerations the Missouri appellate court found that the prosecutor's using a peremptory strike to strike Venireperson Henderson did not violate Petitioner's constitutional rights pursuant to <u>Batson</u>. As such, this court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the court finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. <u>See</u> <u>Batson</u>, 476 U.S. at 96; <u>Pherigo,</u> 327 F.3d at 697; <u>Hill</u>, 249 F.3d at 714; <u>Weaver</u>, 241 F.3d at 1028; <u>Luckett</u>, 203 F.3d at 1054-55; <u>Devose</u>, 53 F.3d at 204. The court finds, therefore, that Petitioner's Ground 2 is without merit and that relief on its basis should be denied.

**D.    Venireperson Carroll:**

In Ground 3 Petitioner contends that his constitutional were violated because the prosecutor was permitted to exercise a peremptory strike to exclude Venireperson Carroll from the jury. In support of Ground 3 Petitioner argues that the prosecutor stated that he struck Carroll because she knew the area where the crime occurred and used the words "hangout in the area." Petitioner also argues, that the prosecutor's justification for striking Venireperson Carroll "conveniently applied only to African American venire members, since only the African American venire members responded to the question of knowing the area." Doc. 1, Supp. at 6. Petitioner further contends that the prosecutor's concern regarding Venireperson Carroll should have been no greater than the views expressed by white Venireperson Anderson; Anderson "harbored some ongoing resentment towards the St. Louis Police due to their failure to pursue his complaint of attempted car theft." Doc. 1, Supp. at 6-7. Petitioner also argues that the prosecutor's concern that Venireperson Carroll might

know someone involved in Petitioner's case should have been no greater than the views of a white juror, Venireperson Anderson, whom the prosecutor did not strike. Doc. 1, Supp. at 6.

Petitioner contends that "the prosecutor could have more appropriately ask[ed] the panel if any of them knew the individuals in the case, rather than if they knew the area" and that the Missouri appellate court's adjudication of the issue of Ground 3 was based upon an unreasonable application of federal law. Doc. 14 at 12-14.

During jury selection when the prosecutor used a peremptory strike to strike Venireperson Carroll, defense counsel objected based on <u>Batson</u>. In response to this objection, the prosecutor offered the following explanation:

> Kimberly Carroll, the reason why I struck her [is] she indicated that she knows the area and, in fact, I wrote down hangs out in the area of Pope and West Florissant. The three defendants as well as the victim in this case all are from that area. The victim was living there at the time. The witnesses were all living there at the time. The three defendants all lived in that general area of being like three streets over.

> My concern with her is the fact that she actually used the words "hang out in that area." I'm afraid she is going to know somebody that may know something or may know of these particular individuals.

Resp. Ex. 1 at 288-89.

In response, defense counsel argued as follows:

> Miss Carroll, juror Number 522, a black female, Mr. Bird indicated he struck her because she knows the area or is familiar with the area. Well, O'Fallon Park is almost virtually one hundred percent African American. If striking jurors because they know the area is a reason then again, I think it's just pretextural, it's being used to remove black jurors and I believe virtually all the jurors that said they knew the area was black, that's simply because that's an area that's densely populated by African Americans. In addition, she indicated she hung out, she didn't say in the area, she said she hung out in O'Fallon Park which is a popular place for African Americans to hand out particularly on Sundays. She gave no indication she was familiar with this incident and again, I believe it's pretextural.

Resp. Ex. 1 at 292-93.

The prosecutor replied as follows:

Judge, my notes say she knows the area, I wrote hang out and after that Pope and West Florissant. Obviously the victim and the witnesses all live at Pope and West Florissant and the defendants live either two or three streets over from Pope and West Florissant. I don't think that it's farfetched that when someone hangs out in that area that someone heard things about these particular named defendants. All the other people did not say that they hung out in that area. They may have said they hang out. She is the only one that said she hangs out in the area where the murder took place.

Resp. Ex. 1 at 293.

The court has set forth above what the trial court said in regard to Petitioner's <u>Batson</u> challenges. In regard to Petitioner's Ground 3 and Venireperson Carroll the Missouri appellate court held:

> We further do not find the trial court's ruling denying the defendant's <u>Batson</u> claim as to the prosecutor's exclusion of Kimberly Carroll clearly erroneous. According to the prosecutor, Ms. Carroll was struck because she hangs out in the area where the crime occurred, and is from the area where the three defendants, victim and witnesses all lived. Therefore, the prosecutor was afraid that "she is going to know somebody that may know something or may know of these particular individuals." The defense counsel, however, argued that the area where the crime occurred, O'Fallon Park, is virtually one hundred percent African-American, and therefore striking all jurors who know the area would remove all African-American jurors.

> Disparate impact alone however will not create a per se violation of equal protection. <u>State v. Ashley</u>, 940 S.W.2d 927, 932 (Mo. App. W.D. 1997). And we cannot conclude from the totality of the circumstances that the prosecutor's explanations are merely excuses for improper discrimination. <u>State v. Hall</u>, 955 S.W.2d 198, 205 (Mo. banc 1997). Where as here, the defendant has failed to identify any similarly-situated venirepersons who escaped the state's challenge, coupled with the trial court's finding that the prosecutor is known to the court and has not engaged in racist behavior, we cannot hold the trial court's ruling denying the defendant's <u>Batson</u> challenge regarding venireperson Carroll was clearly erroneous. Point denied.

Resp. Ex. 5 at 5-6.

Pursuant to <u>Williams</u>, 529 U.S. at 410-13, the court will consider federal law applicable to Petitioner's Ground 3. The court first notes that the trial court found that the prosecutor's reason for striking Venireperson Carroll was credible. Under federal law, the evaluation of the credibility of the

prosecutor's stated reason for striking a juror lies within the province of the trial judge. See Perigo, 327 F.3d at 696. In regard to Petitioner's claim that the prosecutor did not strike white venirepersons, including Venireperson Anderson, although he struck Venireperson Carroll, the Missouri appellate court considered, consistent with federal law, that Petitioner failed to identify white venirepersons who were similarly situated to Venireperson Carroll. See Luckett, 203 F.3d at 1055. Moreover, the Missouri appellate court considered that disparate impact does not alone establish a Batson violation. Likewise, the Supreme Court holds that an "'official action'" is not unconstitutional "'solely because it results in a racially disproportionate impact. ... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" Hernandez v. New York, 500 U.S. 352, 360 (1991) (quoting Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65 (1977)). See also Devoil-El v. Groose, 160 F.3d 1184, 1187 (8th Cir. 1998) ("[D]isparate impact alone, without the showing of the intent to discriminate, will not 'trigger the strictest level of scrutiny.") (quoting United States v. Greene, 995 F.2d 793, 796 (8th Cir. 1993)). As such, the court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. Hernandez, 500 U.S. at 360; Batson, 476 U.S. at 96; Perigo, 327 F.3d at 696; Luckett, 203 F.3d at 1055; Devoil-El, 160 F.3d at 1187. Additionally, the court finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.


**Grounds 4 - Petitioner's constitutional rights were violated because the trial court abused its discretion and admitted as evidence a photograph of Petitioner:**

In support of Ground 4 Petitioner argues that jury's viewing the "mugshot" taken of him on February 18, 1997, "allowed the jury to determine 'prior arrests and bad acts'" of Petitioner when

deliberating. Doc. 1, Supp. at 7. Petitioner further argues that this mugshot was shown to witnesses the day the victim was shot; that Petitioner's appearance in this mugshot differed from his appearance at the time the victim was killed; that there was no need to show Petitioner's prior mugshot to the jury; and that, by viewing the mugshot, the jury could determine that Petitioner was "involved in other crimes outside of that [for] which he was being tried." Petitioner further contends that there was no need to identify the date of the mugshot because another witness testified that Petitioner looked different on the date of the murder than he looked two years prior. Doc. 1, Supp. at 7-9; Doc. 14 at 15-16.

At Petitioner's trial a photograph of Petitioner which was taken on February 18, 1997 was admitted into evidence during the testimony of Lashonda Young. Ms. Young testified that on March 22, 1998, after leaving the scene of the crime she went to the Ferguson Police Department; that homicide detectives were present; and that they showed her pictures. In particular, Ms. Young testified as follows:

Q. You meet the Ferguson police department and they show you this?

A. Yes.

Q. And the detectives are there, the homicide detectives are there?

A. Yes.

...

Q: [the prosecutor]. ... Let me just show this [the photograph].
42A. They show you that, is that correct?

A. Yes.

Q. And when they show you that you are not able to identify anyone?

A. No.

Q. Okay. With regards to Deaminges Davis, whose picture is number four in

there, if we look at number four and peel back the Post-it note on there leaving the date —

Resp. Ex. 1 at 480-81.

Defense counsel then objected and argued that the jury should not be allowed to be informed that the photographs were "mug shot photos" because that would be evidence of prior misconduct. Resp. Ex. 1 at 481. The prosecutor responded that the fact that the picture was old was important because Ms. Young could not identify Petitioner in the photographic line-up; that the photograph was proper for rehabilitation of Ms. Young on redirect because it would explain why she could not identify Petitioner in the photographic line-up; and that he would not call the photograph a "mugshot." After further discussion the trial court ruled that the prosecutor could introduce the photograph but that he could not introduce evidence of its date. Resp. Ex. 1 at 486. The following questioning of Ms. Young then took place:

> Q. When we last left we were talking about State's Exhibit 42-A, okay, and you looked at that photo spread the day of the particular incident, March 22nd of 1998, correct?
>
> A. Right.
>
> Q. And you didn't identify anybody, correct?
>
> A. No.
>
> Q. With regards to picture number four, the individual that's pictured in number four, you don't know when that photograph was taken, do you?
>
> A. No.

Resp. Ex. 1 at 488.

Defense counsel again objected and the trial court ruled that it would not allow evidence of the date the photograph was taken unless the prosecutor had case law to support his position. In response the prosecutor proffered State v. Hemphill, 699 S.W.2d 83 (Mo. Ct. App. 1985), for the

proposition that a mug shot of a defendant is admissible in capital murder prosecution even though the date upon which the picture is taken is not blanked out if the picture is relevant to explain a witness's inability to make identification from the picture. Resp. Ex. 1 at 498. The court then ruled that the photograph would be admitted with its date as long as none of the other printed information on the photograph was shown to the jury. Resp. Ex. 1 at 500. The prosecutor then continued to question Ms. Young as follows:

Q. Getting back to State's Exhibit 42-A if I could, directing your attention to number four, picture of Deaminges Davis we're talking about.

A. Yes.

Q. Would you agree with me that the date of the photograph of State's Exhibit 42-A for Deaminges Davis, the date the photograph was taken was February 18th of '97?

A. Yes.

Q. That's what it says?

A. Yes.

Q. So that the date of this photograph was some thirteen months prior to March 22nd of 1998, the date that the murder happened?

A. Yes.

Q. Thirteen months and four days, correct?

A. Right.

Q. And the photograph that you saw of him where you identified him in the line-up that was taken a month and approximately nine days after the date that Willie Curry was shot and killed.

A. Yes.

Q. And in that total span, so this [Exhibit 42A] was thirteen months prior to the murder and this [the photograph of the live line-up] was a month and a half after the murder?

A. Yes.

Resp. Ex. 1 at 501-502.

In regard to the issue of Ground 4, the Missouri appellate court held that:

> A trial court has broad discretion in deciding whether to admit or exclude evidence, and may be reversed only for a clear abuse of discretion. <u>State v. Simmons</u>, 944 S.W.2d 165, 178 (Mo. banc 1997). A trial court abuses its discretion when a ruling is "clearly against the logic and circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." <u>State v. Brown</u>, 939 S.W.2d 882, 993 (Mo. banc 1997).

Resp. Ex. 5 at 6-7.

Relying on <u>State v. Hemphill</u>, 699 S.W.2d 83, 85 (Mo. Ct. App. 1985), the court found that the date on the mugshot was relevant because in both <u>Hemphill</u> and in Petitioner's case "the witness who identified the defendant at the scene of the crime was unable to identify the defendant from the picture. Because the mugshots were old photos, the dates of the photographs were relevant in order to show that the defendant's appearance had changed since the photos were taken." Resp. Ex. 5 at 7. The Missouri appellate addressed Petitioner's argument that, because an additional witness identified Petitioner, the date on his mugshot was less probative than the date on the mugshot in <u>Hemphill</u>. The court concluded that the date on Petitioner's mugshot was nonetheless "highly probative because the age of the mugshot helped explain why an eyewitness could not identify the defendant from his mugshot." Resp. Ex. 5 at 7.

First, "'federal habeas corpus relief does not lie for errors of state law'"; "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) and citing <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984)). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam )).  Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition.  Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990).  Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights."  Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), cert. denied, 543 U.S. 1067 (2005) (citing Estelle, 502 U.S. at 68); Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995); Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990).

The Eighth Circuit held in Anderson, 44 F.3d at 679, in regard to § 2254 review by a federal court:

> ... [W]e will reverse a state court evidentiary ruling only if the "petitioner ... show[s] that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." [Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987)] (citations omitted). ... Of particular importance is the frequency and pervasiveness of the alleged misconduct in the context of the entire trial, the weight of the evidence supporting guilt, and whether the trial judge gave a cautionary instruction to the jury on how to properly use the testimony elicited. Hamilton, 809 F.2d at 470. Cf. United States v. Jackson, 41 F.3d 1231, 1233 (8th Cir.1994) (detailing this three-part inquiry for claims of prosecutorial misconduct on direct appeal).

Petitioner cannot establish that the outcome of his trial would have been different had the photograph of Petitioner not been admitted as evidence as Ms. Young identified Petitioner as being present at the scene of the crime.  See Resp. Ex. 1 at 476-77.  Under such circumstances, the court finds that no constitutional right has been implicated by the trial court's evidentiary ruling in regard to the issue raised in Petitioner's Ground 4; that the issue raised in Petitioner's Ground 4 is a matter

of State law; and that, therefore, Petitioner's Ground 4 is not cognizable pursuant to federal habeas review.  See Estelle, 502 U.S. at 67-68;  Evans, 371 F.3d at 443; Scott, 915 F.2d at 1190-91.

Assuming, arguendo, that the evidentiary error raised by Petitioner in Ground 4 rises to a constitutional level, the court will consider pursuant to Williams federal law applicable to the issue raised in Petitioner's Ground 4.  Federal law provides that the admission of evidence is a matter of discretion for the trial court; "the trial court's determination that evidence is relevant and that its probative value outweighs the danger of unfair prejudice will not be reversed on appeal unless the trial court has abused that discretion."  United States v. Macklin, 104 F.3d 1046, 1048 (8th Cir. 1997) (citing United States v. Delpit, 94 F.3d 1134, 1146 (8th Cir.1996); United States v. Just, 74 F.3d 902, 904 (8th Cir.1996)). Even where admission of evidence is erroneous, such admission does not necessarily fatally infect a trial. See e.g., Kuntzelman v. Black, 774 F.2d 291, 292 (8th Cir. 1985) (per curiam) (finding no error of constitutional magnitude in the admission of "particularly gruesome"photographs where the photographs "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent of [the petitioner] in firing the shot that killed [the victim]").

Federal Rule of Evidence 404(b) prohibits the "use of a defendant's prior bad acts as character evidence, but permits such evidence to prove other factors such as the defendant's motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident. It is a rule of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination." United States v. Johnson, 439 F.3d 947, 952 (8th Cir. 2006) (citing United States v. Hill, 410 F.3d 468, 471 (8th Cir.2005)).  Relying on Rule 404(b), the Eighth Circuit has held that a court did not abuse its discretion in admitting evidence of a defendant's prior convictions *to prove identity*.  United States v. Oman, 427 F.3d 1070, 1075 (8th Cir. 2005) (holding that evidence

of a prior crime is "inadmissible to show that a person acted in conformity with the prior act," but may be admissible to show "'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'") (quoting United States v. Thomas, 398 F.3d 1058, 1062 (8th Cir. 2005); United States v. Carroll, 207 F.3d 465, 469 n.2 (8th Cir. 2002)), cert. denied, 126 S.Ct. 1635 (Mar. 27, 2006). Under federal law, a trial court's decision to admit evidence of prior crimes is reversed only "'when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" United Stated v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002) (quoting United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998)). "In balancing the prejudicial effect and probative value," a federal court gives great deference to the trial court's determination. Id. (citing United States v. Claxton, 276 F.3d 420, 422 (8th Cir. 2002)).

Thus, the Missouri appellate court's consideration that it is within a trial court's discretion to admit evidence is consistent with the federal law as set forth in Ruiz-Estrada, 312 F.3d at 403. Consistent with federal law, including Macklin, 104 F.3d at 1048, the Missouri appellate court considered the probative value of Petitioner's mugshot and concluded that in Petitioner's case the date of the mugshot was relevant to explain why Ms. Young could not identify Petitioner in the photographic line-up. Moreover, the photograph of Petitioner was not introduced to show his propensity to commit a crime. Rather, it was introduced to demonstrate why Ms. Young was unable to identify Petitioner when she was shown the picture of him by the Ferguson police; it was introduced for purposes of identifying Petitioner. Thus, admission of the picture is consistent with Rule 404(b). The court finds, therefore, that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 4 is not contrary to federal law and that it is a reasonable interpretation of federal law. See Oman, 427 F.3d at 1075; Ruiz-Estrada, 312 F.3d at 403;

Macklin, 104 F.3d at 1048. Additionally, the court finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 4 is without merit and that habeas relief on its basis should be denied.

**Ground 5 - Petitioner's constitutional rights were violated when Detective Jordan testified that he obtained a photograph of Petitioner from the Ferguson police department:**

In support of Ground 5 Petitioner contends that, when Detective Jordan testified that the photograph of Petitioner at issue in Ground 4 was obtained from the Ferguson police department, improper evidence of Petitioner's prior arrests and criminal conduct was presented to the jury. Petitioner acknowledges that pursuant to an objection from defense counsel, the trial court said that Detective Jordan could identify the photograph as located in Ferguson and that Detective Jordan then testified that the photograph of Petitioner came from Ferguson and that he "requested Ferguson to compile a photo spread." Petitioner further argues that he was prejudiced by Detective Jordan's testimony in regard to the source of the photograph and that this prejudice outweighed any probative value. Petitioner contends that the Missouri appellate court's decision in regard to the issue of Ground 5 is an unreasonable application of federal law. Doc. 1, Supp. at 9-10; Doc. 14 at 16-17.

At Petitioner's trial, after Ms. Young testified, Detective Robert Jordan testified. Detective Jordan testified that after interviewing a witness and learning the name "Deaminges" he conducted an investigation of Petitioner and attempted to obtain a photograph of him. Upon the prosecutor's asking Detective Jordan where he located a photograph of Petitioner, defense counsel objected. The trial court ruled that Detective Jordan could testify that he located a photograph of Petitioner in Ferguson without saying the word police. Resp. Ex. A at 639-40. Detective Jordan then testified as follows:

> Q. [prosecutor] Did you locate a photograph of Deaminges Davis from Ferguson?

A. Yes.

Q. And did you request Ferguson to compile a photo spread?

A. Yes, we requested some other photos from them to put in a photo

spread.

Resp. Exhibit 1 at 640.

In regard to the issue raised in Petitioner's Ground 5 the Missouri appellate court held as

follows:

> The defendant's final point on appeal is that the trial court erred in allowing
> the prosecutor to elicit from Detective Robert Jordan the fact that the defendant's
> mugshot came from Ferguson. We again disagree.
>
> As stated above, a trial court has broad discretion in deciding whether to
> admit or exclude evidence, and may be reversed only for a clear abuse of discretion.
> State v. Simmons, 944 S.W.2d at 178. Here, we fail to see how Detective Jordan's
> testimony prejudiced the defendant given that another witness, Lashonda Young, had
> previously testified that the Ferguson police showed her photographs of the
> defendant. A defendant suffers no prejudice and cannot complain about the admission
> of evidence over objection where similar evidence is admitted without objection.
> State v. Evans, 992 S.W.2d 275, 290 (Mo. App. S.D. 1999). Accordingly, we
> cannot find that the trial court abused its discretion in allowing Detective Jordan's
> testimony. Point denied.

Resp. Ex. 5 at 7-8.

As discussed more fully above in regard to Petitioner's Ground 4, habeas corpus relief does

not lie for errors of state law, admission of evidence involves state law, and, therefore, federal habeas

relief rarely may be obtained for evidentiary errors. See Estelle, 502 U.S. at 67-68; Scott, 915 F.2d

at 1190-91. Petitioner has not shown that Detective Jordan's testimony regarding his obtaining a

photograph of Petitioner infected the outcome of his trial. Indeed, prior to Detective Jordan's

testimony about the photograph, Ms. Young had already testified regarding her being shown a

photograph of Petitioner by the Ferguson police. The court finds, therefore, that no constitutional

right has been implicated by the court's evidentiary ruling in regard to the testimony of Detective

Jordan; that the issue raised in Petitioner's Ground 5 is a matter of State law; and that, therefore, Petitioner's Ground 5 is not cognizable pursuant to federal habeas review. See Estelle, 502 U.S. at 67-68; Evans, 371 F.3d at 443; Scott, 915 F.2d at 1190-91.

The court, alternatively, will assume that Petitioner's Ground 5 is cognizable under federal habeas review. As set forth above, federal law applicable to admission of evidence provides that admission of evidence is within the discretion of the trial court; a trial court is reversed in regard to a determination to admit evidence only where it has abused its discretion; and discretion is abused only where the defendant is prejudiced. See Macklin, 104 F.3d at 1048. Also, under federal law where questions are posed to a prosecution witness and the witness testifies without objection concerning matters which show or suggest another independent offense on the part of the defendant, subsequent objections to the matters testified are waived. Brennan v. United States, 240 F.2d 253, 262 (8th Cir. 1957). As set forth above in regard to Ground 4, defense counsel did not initially object to Ms. Young's testimony regarding her being shown the photograph of Petitioner.

Upon considering the issue of Petitioner's Ground 5, and consistent with federal law, the Missouri appellate court first noted that because Petitioner did not object to Ms. Young's testifying that Ferguson police officers showed her the photograph of Petitioner, Petitioner could not subsequently object to Detective Jordan's testifying that Petitioner's photograph came from Ferguson. See id. As such, consistent with federal law applicable to a determination of whether admission of evidence resulted in a constitutional violation, the Missouri appellate court concluded that Petitioner could not show that he was prejudiced by the trial court's ruling. See Macklin, 104 F.3d at 1048. Therefore, the court finds, alternatively, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 5 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied

federal law to the facts of Petitioner's case. As such, the court finds that the issue raised in Petitioner's Ground 5 is without merit and that relief on its basis should be denied.

## V.
## CONCLUSION

The court finds that the issues raised in Petitioner's Grounds 4 and 5 are not cognizable pursuant to § 2254. The court further finds that the Petitioner's Grounds 1-3 and, alternatively, Grounds 4 and 5 are without merit. The court finds, therefore, that Petitioner's § 2254 Petition should be dismissed. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See <u>Tiedeman v Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the § 2254 Petition filed by Petitioner be **DISMISSED**, with prejudice. Doc. 1

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this <u>13th</u> day of June, 2007.          UNITED STATES MAGISTRATE JUDGE